**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **AGILITAS USA INC. d/b/a RESULTS PHYSIOTHERAPY,** | ) ) ) | **Case No.: 3:21-cv-00094** |
| Plaintiff, | ) ) | **Judge: Hon. Aleta A. Trauger** |
| v. | ) ) | **MEMORANDUM OF LAW IN** |
| **HARTFORD FIRE INSURANCE COMPANY,** | ) ) ) | **SUPPORT OF DEFENDANT HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR** |
| Defendant. | ) ) | **JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)** |
| | ) ) | **ORAL ARGUMENT REQUESTED** |
| | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

I.     The Policy ................................................................................................................. 2

II.    Plaintiff's Allegations ............................................................................................. 4

LEGAL STANDARD ........................................................................................................... 5

I.     Standard for Motion for Judgment on the Pleadings ........................................... 5

II.    The Plain and Unambiguous Policy Terms Govern under Tennessee Law ...................... 5

ARGUMENT ........................................................................................................................ 6

I.     The Virus Exclusion Bars Plaintiff's Claims ..................................................... 7

II.    Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage
Because There was No Direct Physical Loss or Physical Damage to Its Properties ........ 11

III.   Plaintiff Has Not Alleged That It Is Entitled to Civil Authority or Ingress or
Egress Coverage Under the Policy .................................................................. 15

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*,
No. 20 Civ. 4471 (LGS), 2020 WL 7360252 (S.D.N.Y. Dec. 15, 2020) ...............................13

*1210 McGavock St. Hosp. Partners, LLC v. Admiral Indem. Co.*,
No. 3:20-cv-694, 2020 WL 7641184 (M.D. Tenn. Dec. 23, 2020) ................................ *passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................5

*BA LAX, LLC v. Hartford Fire Ins. Co.*,
No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248 (C.D. Cal. Jan. 12, 2021) ...................10, 13

*Barbizon Sch. of S.F., Inc. v. Sentinel Ins. Co., Ltd.*,
No. 3:20-cv-08578-TSH, 2021 WL 1222161 (N.D. Cal. Mar. 31, 2021) ...............................12

*Barroso, Inc. v. Twin City Fire Ins. Co*.,
No. 1:20-cv-632 (LMB/MSN) (E.D. Va. Nov. 10, 2020) ........................................................9

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ...................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................5

*Black v. Aetna Ins. Co.*,
909 S.W.2d 1 (Tenn. Ct. App. 1995) ........................................................................................6

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
No. 1:20CV1895, 2021 WL 663675 (N.D. Ohio Feb. 19, 2021) ...........................................10

*Ceres Enters., LLC v. Travelers Ins. Co.*,
No. 1:20-CV-1925, 2021 WL 634982 (N.D. Ohio Feb. 18, 2021) .........................................10

*Clark v. Sputniks, LLC*,
368 S.W.3d 431 (Tenn. 2012) ...................................................................................................6

*Colgan v. Sentinel Ins. Co., Ltd*.,
No. 20-cv-04780-HSG, 2021 WL 472964 (N.D. Cal. Jan. 26, 2021) ...............................10, 13

*Commstop v. Travelers Indem. Co. of Conn.*,
Civ. A. No. 11-1257, 2012 WL 1883461 (W.D. La. May 17, 2012) ......................................18

Case 3:21-cv-00094   Document 13-1   Filed 04/05/21   Page 3 of 27 PageID #: 566

*Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co.*,
    No. 20-61577-CIV-DIMITROULEAS, 2021 WL 80535
    (S.D. Fla. Jan. 8, 2021) ..................................................................13

*Equity Plan. Corp. v. Westfield Ins. Co.*,
    No. 1:20-CV-01204, 2021 WL 766802 (N.D. Ohio Feb. 26, 2021).......................10

*Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co.*,
    Civ. No. 20-05743 (KM) (ESK), 2021 WL 457890 (D.N.J. Feb. 8, 2021) ............10

*Firenze Ventures LLC v. Twin City Fire Ins. Co.*,
    No. 20 C 4226, 2021 WL 1208991 (N.D. Ill. Mar. 31, 2021) .................................12

*Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*,
    No. 20-cv-3418 (JGK), 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021).......................12

*Founder Inst. Inc. v. Hartford Fire Ins. Co.*,
    No. 20-cv-04466-VC, 2020 WL 6268539 (N.D. Cal. Oct. 22, 2020) ......................9

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
    488 F. Supp. 3d 904 (N.D. Cal. 2020) ..............................................................9, 14

*Garrison v. Bickford*,
    377 S.W.3d 659 (Tenn. 2012)...............................................................................6

*Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*,
    No. CV 20-04647-GW-MAAx, 2020 WL 7350413 (C.D. Cal. Dec. 3, 2020).......13

*Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*,
    Civ A. No. 1:20-CV-2939-TWT, 2020 WL 5938755 (N.D. Ga. Oct. 6, 2020)...........14, 16, 18

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.*,
    Civ. A. No. 1:20-CV-275-JB-B, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020).....................12

*Hollis v. Doerflinger*,
    137 S.W.3d 625 (Tenn. Ct. App. 2003) ..............................................................11

*J&H Lanmark, Inc. v. Twin City Fire Ins. Co.*,
    Civ. A. No. 5:20-333-DCR, 2021 WL 922057 (E.D. Ky. Mar. 10, 2021) ...............9

*Jones v. Select Portfolio Servicing, Inc.*,
    672 F. App'x 526 (6th Cir. 2016) ..........................................................................5

*Karmel Davis & Assocs., Attorneys-At-Law, LLC v. Hartford Fin. Servs. Grp., Inc.*,
    No. 1:20-cv-02181-WMR, 2021 WL 420372 (N.D. Ga. Jan. 26, 2021) ................12

iii

*Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. Nat'l Fire Ins.*
  *Co. of Hartford*,
  Civ. A. No. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) ....................................18

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
  440 F. Supp. 3d 520 (D.S.C. 2020)........................................................................................18

*Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*,
  No. 20-cv-04783-SK, 2021 WL 141180 (N.D. Cal. Jan. 13, 2021) ......................................13

*Merrimack Mut. Fire Ins. Co. v. Batts*,
  59 S.W.3d 142 (Tenn. Ct. App. 2001) .....................................................................................6

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  No. 20 Civ. 4612 (JPC), 2020 WL 7321405 ...................................................................14, 16

*Moody v. Hartford Fin. Grp., Inc.*,
  Civ. A. No. 20-2856, 2021 WL 135897 (E.D. Pa. Jan. 14, 2021) .....................................9, 14

*Mudpie, Inc. v. Travelers Cas. Ins. Co.*,
  487 F. Supp. 3d 834 (N.D. Cal. 2020) ...............................................................................12, 18

*Nahmad v. Hartford Cas. Ins. Co.*,
  No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841
  (S.D. Fla. Nov. 2, 2020)..................................................................................9, 13, 16, 17

*Nationwide Affinity Ins. Co. of Am. v. Richards*,
  439 F. Supp. 3d 1026 (W.D. Tenn. 2020)................................................................................6

*Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*,
  No. 1:20-CV-437, 2020 WL 7024882 (M.D.N.C. Nov. 30, 2020) .........................................9

*Newchops Rest. Comcast LLC v. Admiral Indem. Co.*,
  Civ. A. Nos. 20-cv-1889 & 20-cv-1869, 2020 WL 7395153
  (E.D. Pa. Dec. 17, 2020) .......................................................................................................15

*Nixon v. Wilmington Tr. Co.*,
  543 F.3d 354 (6th Cir. 2008) ...................................................................................................5

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*,
  487 F. Supp. 3d 937 (S.D. Cal. 2020)....................................................................................17

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
  Civ. A. No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004)....................18

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*,
  485 F. Supp. 3d 1225 (C.D. Cal. 2020) .................................................................................14

iv

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*,
    No. 06-22535-CIV-UNGARO, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007).......................15

*Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*,
    No. 20-cv-03674-BLF, 2021 WL 428653 (N.D. Cal. Feb. 8, 2021) ................................10, 12

*Pure Fitness LLC v. Twin City Fire Ins. Co.*,
    2:20-CV-775-RDP, 2021 WL 512242 (N.D. Ala. Feb. 11, 2021)............................................9

*Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*,
    Civ. A. No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405
    (S.D. Miss. Nov. 4, 2020) ......................................................................................................14

*Richard Kirsch, DDS v. Aspen Am. Ins. Co.*,
    No. 20-11930, 2020 WL 7338570 (E.D. Mich. Dec. 14, 2020) .................................11, 16, 18

*Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*,
    No. 4:20-cv-00643-SRC, 2021 WL 598818 (E.D. Mo. Feb. 16, 2021) .............................9, 12

*Rose's 1, LLC v. Erie Ins. Exch.*,
    No. 2020 CA 002424 B, 2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) ..................13, 14

*Roth v. Guzman*,
    650 F.3d 603 (6th Cir. 2011) ....................................................................................................5

*Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*,
    No. 1:20-cv-02000-SDG, 2021 WL 37573 (N.D. Ga. Jan. 4, 2021) .......................................13

*S. Hosp., Inc. v. Zurich Am. Ins. Co.*,
    393 F.3d 1137 (10th Cir. 2004) ..............................................................................................18

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
    488 F. Supp. 3d 690 (N.D. Ill. 2020) ......................................................................................17

*Santo's Italian Café LLC v. Acuity Ins. Co.*,
    No. 1:20-cv-01192, 2020 WL 7490095 (N.D. Ohio Dec. 21, 2020) .......................................10

*Se. Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*,
    439 F. Supp. 2d 831 (W.D. Tenn. 2006)..................................................................................11

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ..........................................18

*St. Julian Wine Co. v. Cincinati Ins. Co.*,
    No. 1:20-cv-374, 2021 WL 1049875 (W.D. Mich. Mar. 19, 2021) ........................................12

*Stewart's Wholesale Elec. Supply, Inc. v. FCCI Ins. Grp.*,
    No. 07-5895, 2008 WL 7768692 (6th Cir. May 28, 2008)........................................................6

*Syufy Enters. v. Home Ins. Co. of Ind.*,
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ...........................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................................................5

*Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    484 F. Supp. 3d 492 (E.D. Mich. 2020)...........................................................10, 11

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*,
    Civ. A. No. 20-2401, 2021 WL 131556 (E.D. Pa. Jan. 14, 2021) ...........................................13

*United Air Lines v. Ins. Co. of the State of Pa.*,
    439 F.3d 128 (2d Cir. 2006).............................................................................................18

*Universal Image Prods., Inc. v. Fed. Ins. Co.*,
    475 F. App'x 569 (6th Cir. 2012) .........................................................................11

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
    No. 20-cv-03750-WHO, 2020 WL 6562332 (N.D. Cal. Nov. 9, 2020) ..................................16

*Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.*,
    No. 2:20-cv-06132-JFW, 2021 WL 1060230 (C.D. Cal. Mar. 19, 2021)...........................9, 12

*Wilson v. Hartford Cas. Co.*,
    Civ. A. No. 20-3384, 2020 WL 5820800 (E.D. Pa. Sept. 30, 2020) .........................................9

vi

# INTRODUCTION

Plaintiff brings this lawsuit to recover purported losses it suffered when it limited operations at its physiotherapy centers as a result of governmental orders to slow the spread of COVID-19. Plaintiff asks the Court to find that its property insurer, defendant Hartford Fire Insurance Company ("HFIC"), must cover these virus-related losses under a property insurance policy that HFIC issued to Plaintiff (the "Policy"). The Policy does not cover the alleged losses for at least three reasons.

First, the Policy does not cover losses caused by a virus. The Policy contains a Virus Exclusion that provides that HFIC "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . [a] virus." Doc. 1-1, Compl., Ex. C, Policy at 226-27.[1] Plaintiff's claimed losses fall squarely within this exclusion. Plaintiff alleges it limited its operations in response to governmental orders aimed at slowing the spread of the coronavirus, which undisputedly is a virus. As a result, Plaintiff's alleged losses were "caused directly or indirectly" by a virus and are excluded from coverage. Courts in at least 21 decisions already have concluded that virtually identical virus exclusions in other HFIC and related company policies bar coverage for losses associated with COVID-19 government orders. This case is no different.

Second, even if the Virus Exclusion did not apply (it does), Plaintiff still would not be entitled to Business Income or Extra Expense coverage because it does not allege any direct physical loss or damage to property. The Policy makes clear that Plaintiff must show that its claimed losses were the result of direct physical loss of or direct physical damage to its properties to trigger coverage under the Business Income or Extra Expense provision. Plaintiff does not allege that

---

[1] The page numbers to the Policy are to the ECF page numbers. This exclusion is referred to in this brief as the "Virus Exclusion."

anything physical happened to its property. Plaintiff, instead, alleges that it had to limit its operations (and suffered resulting losses) due to government orders issued to minimize the spread of COVID-19. This Court already has determined—in *1210 McGavock Street Hospitality Partners, LLC v. Admiral Indemnity Co.*—that loss of use is insufficient under Tennessee law to establish direct physical loss of or damage to property as required by Plaintiff's Policy. No. 3:20-cv-694, 2020 WL 7641184, at *7-9 (M.D. Tenn. Dec. 23, 2020). Again, this case is no different.

Third, again assuming that the Virus Exclusion does not apply, Plaintiff has failed to allege facts demonstrating an entitlement to Civil Authority or Ingress or Egress coverage. The coverage provisions are unambiguous: Plaintiff must show that "access to" or "ingress or egress to" its properties were "specifically prohibited" as "the direct result" of direct physical loss or damage to property. Plaintiff meets none of the prerequisites for such coverage.

While HFIC does not dispute that measures to slow the spread of COVID-19 have resulted in broad disruption to the economy, even the unprecedented fallout from a global pandemic does not provide a basis to override the plain language of the Policy. Because the Policy does not cover Plaintiff's alleged losses, the Court should grant HFIC judgment on the pleadings.

## STATEMENT OF FACTS

**I.     The Policy**

HFIC issued a Special Multi-Flex Business Insurance Policy bearing policy number 08 UUN AY9439 to Plaintiff for the period May 31, 2019 to May 31, 2020 (previously defined as the "Policy"). *See* Doc. 1-1, Compl. ¶ 28 & Ex. C at 37. Plaintiff attached a copy of the Policy as Exhibit C to its Complaint.

The Policy provides that HFIC "will pay for direct physical loss of or direct physical damage to . . . Covered Property caused by or resulting from a Covered Cause of Loss." *Id.* ¶ 31 & Ex. C at 213. The Policy defines "Covered Causes of Loss" as "direct physical loss or direct

physical damage that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy." *Id.* ¶ 32 & Ex. C at 226.

The Policy expressly excludes loss or damage caused by a virus. *See id.*, Ex. C at 226-27. Specifically, the Policy provides:

> [HFIC] will ***not pay*** for loss or damage caused directly or indirectly by any of the following . . . .
>
> g. **"Fungus", Wet Rot, Dry Rot, Bacteria or Virus**
>
> ***Presence, growth, proliferation, spread or any activity of*** . . . [a] ***virus*** . . . .

*Id.* (emphasis added).[2] The Virus Exclusion modifies the coverages that Plaintiff seeks and applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." *Id.*, Ex. C at 226.

Even if an exclusion, like the Virus Exclusion, does not apply to claimed loss, the Policy makes clear that it does not cover every type of loss incurred by Plaintiff. With respect to lost business income and extra expense, which Plaintiff seeks here, coverage for such loss is tied to the "direct physical loss of or direct physical damage to property." The Policy provides that HFIC:

> will pay . . . for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at "Scheduled Premises" . . . .

*Id.*, Ex. C at 219. The Policy defines "Extra Expense" as "the actual, necessary and reasonable expenses you incur during the Period of Restoration that you would not have incurred if there

---

[2] The Virus Exclusion has two exceptions, neither of which is alleged to apply here: (1) when the virus results from fire or lightning, or (2) when the Policy's Additional Limited Virus Coverage applies to the loss. *See* Doc. 1-1, Compl., Ex. C at 227. The latter provision "only applies" if the virus results from a "specified cause of loss" other than fire or lightning (e.g., windstorm, hail, Volcanic Action), from an equipment breakdown, or from flood. *See id.*, Ex. C at 208, 201.

had been no direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss at 'Scheduled Premises'." *Id.*

The Policy also provides limited Civil Authority and Ingress or Egress coverage, which Plaintiff seeks here. Civil Authority coverage applies only "when access to [Plaintiff's property] is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [Plaintiff's property].'" *Id.*, Ex. C at 205. "Ingress or Egress" coverage applies only when "ingress or egress to [Plaintiff's property] is specifically prohibited as the direct result of a Covered Cause of Loss to property at premises that is contiguous to [Plaintiff's property]." *Id.*, Ex. C at 208.

## II.     Plaintiff's Allegations

Plaintiff's Complaint is based on losses that allegedly occurred as a result of COVID-19. Plaintiff alleges that it sustained losses when officials in the nine states in which it operates physiotherapy centers issued "a series of orders closing businesses that did not offer essential services, including many of Plaintiff's facilities." Doc. 1-1, Compl. ¶¶ 1-2, 14-24. These orders allegedly prevented Plaintiff's "patients, physical therapists and employees from physically occupying its physiotherapy facilities and prevented Plaintiff from operating its businesses," or required Plaintiff to "severely limit business" at its facilities for "a period of several weeks." *Id.* ¶¶ 3, 25-26. Plaintiff acknowledges that it was allowed "to provide limited essential services at some of the clinics." *Id.* ¶ 26.

Plaintiff seeks to recover from HFIC for the losses that it allegedly sustained because of the temporary reduction of its operations. Plaintiff contends that these losses are covered by the Business Income, Extra Expense, Civil Authority, and Ingress or Egress provisions of its Policy. *Id* ¶¶ 59-60, 63-79. The Complaint asserts four counts seeking a declaratory judgment that

4

Plaintiff's losses are covered under the Policy and asking the Court to find that HFIC breached the Policy by denying Plaintiff's insurance claim under the Policy. *Id.* ¶¶ 63-85.

## LEGAL STANDARD

### I.     Standard for Motion for Judgment on the Pleadings

When deciding a Rule 12(c) motion for judgment on the pleadings, courts in the Sixth Circuit apply the same standard used to evaluate a Rule 12(b)(6) motion to dismiss. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). Thus, to survive a motion for judgment on the pleadings, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

In resolving this Motion, the Court may properly consider the Policy because it is attached to, relied upon, and incorporated by reference in the Complaint, and the civil authority orders because they are referenced in the Complaint (Doc. 1-1, Compl. ¶¶ 14-25) and central to Plaintiff's claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court may disregard any allegations in the Complaint that are plainly contradicted by the actual terms of the Policy or the executive orders. *See Jones v. Select Portfolio Servicing, Inc.*, 672 F. App'x 526, 531 (6th Cir. 2016).

### II.    The Plain and Unambiguous Policy Terms Govern under Tennessee Law

Under Tennessee law, interpretation of a contract, like the Policy, is a question of law to

be decided by the court. *See Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012).[3]

"When the language of an insurance policy is clear and unambiguous, the court is bound to give effect to that language." *1210 McGavock*, 2020 WL 7641184, at *4 (citation omitted). Terms in the Policy "should be given their plain and ordinary meaning," and the Policy should be construed "as a whole in a reasonable and logical manner." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012) (internal quotations and citations omitted). Courts "are not at liberty to rewrite an insurance policy simply because [they] do not favor its terms," *Black v. Aetna Ins. Co.*, 909 S.W.2d 1, 3 (Tenn. Ct. App. 1995), and "must avoid forced constructions that render a provision ineffective or extend a provision beyond its intended scope," *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001) (citation omitted); *see also Stewart's Wholesale Elec. Supply, Inc. v. FCCI Ins. Grp.*, No. 07-5895, 2008 WL 7768692, at *1 (6th Cir. May 28, 2008) (applying Tennessee law) ("An unambiguous policy may not be rewritten by the court.").

## ARGUMENT

Plaintiff's claims should be dismissed based on the Policy's plain and unambiguous language and the allegations in the Complaint. Plaintiff asserts four causes of action. *See* Doc. 1-1, Compl. ¶¶ 63-85. Each of these causes of action depends on the Policy providing coverage for Plaintiff's alleged losses.

The Policy makes clear that it does not cover Plaintiff's alleged losses. The alleged losses are specifically excluded by the unambiguous Virus Exclusion. And, even if they were

---

[3] This Motion assumes for purposes of this motion that Tennessee law applies to Plaintiff's claims, given that Agilitas USA Inc. is based in Tennessee and presumably was issued the Policy in Tennessee. *See* Doc. 1-1, Compl. ¶ 10, Ex. C at 37. *See also Nationwide Affinity Ins. Co. of Am. v. Richards*, 439 F. Supp. 3d 1026, 1031 (W.D. Tenn. 2020) ("In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'" (citation omitted)).

not, Plaintiff cannot demonstrate an entitlement to coverage in the first instance. Plaintiff is not entitled to coverage under the Business Income or Extra Expense provision because its insured properties experienced no direct physical loss or damage. Indeed, Plaintiff does not allege that anything physical at all happened to its properties. Rather, Plaintiff reduced its operations in response to orders that were issued to slow the spread of COVID-19. Nor is Plaintiff entitled to recover under the Civil Authority or Ingress or Egress coverage provisions as Plaintiff can meet none of the requirements for either coverage.

## I.     The Virus Exclusion Bars Plaintiff's Claims

The Virus Exclusion unambiguously bars coverage for all of Plaintiff's claims. The Policy provides that HFIC "will not pay for loss or damage caused directly or indirectly by . . . [the p]resence, growth, proliferation, spread or any activity of . . . [a] virus." *Id.*, Ex. C at 226-27. The exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." *Id.* at 226.

Plaintiff's allegations make clear that its alleged losses fall squarely within the Virus Exclusion. Plaintiff claims that its losses were caused by a series of governmental orders that limited its operations. *See id.* ¶¶ 2, 14-27. The orders that Plaintiff cites as the cause of its losses demonstrate that they were issued to limit the spread of COVID-19, the disease caused by SARS-CoV-2, which undisputedly is a virus. *See id.* ¶¶14-24.[4] As a result, it is clear that

---

[4] *See, e.g.*, Ex. 1, Tennessee Executive Order 23 (directing people to stay at home and stating "staying at home as much as possible for a temporary period of time will protect the health and safety of Tennesseans by *limiting the spread of COVID-19*") (emphasis added); Ex. 2, Kentucky Executive Order (ordering certain directives to "*reduce and slow the spread of COVID-19*") (emphasis added); Ex. 3, Alabama State Health Officer Order (implementing social distancing measures "to *prevent the spread of COVID-19*") (emphasis added); Ex. 4, Georgia Executive Order 04.02.20.01 (ordering all Georgians to shelter in place "to limit social interaction to prevent *the spread or infection of COVID-19*") (emphasis added); Ex. 5, Indiana Executive Order 20-08 (stating that the intent of the order was "to ensure that the maximum number of

Plaintiff's losses were caused "directly or indirectly" by the spread of a virus. Coverage, therefore, is excluded.

Plaintiff attempts to avoid this result by suggesting that its losses were caused by the governmental orders as opposed to a virus. But numerous courts, **including this Court**, have rejected this very argument when analyzing similar virus exclusions to the one found in Plaintiff's Policy. In *1210 McGavock*, for example, this Court found that the "language of the closure orders establishes that the orders would not have been issued were it not for the threat posed by the coronavirus, which is indisputably a virus," and, thus, the plaintiff's loss "result[ed] from" the coronavirus and was barred by the virus exclusion. 2020 WL 7641184, at *6.[5] The same is the case here.

This is not the first time that an insured has attempted to recover for alleged losses caused by a government order issued as a result of COVID-19 under a policy issued by HFIC or its affiliates that contains a virus exclusion with the exact same language as the one in Plaintiff's Policy. In at least 21 instances, the courts have found that coverage for the losses is barred by the specific language of the Virus Exclusion in Plaintiff's Policy. For example, a court in the Eastern District of Kentucky recently rejected the insured's attempt to sidestep the virus exclusion by claiming its losses were due to government orders as opposed to COVID-19 and

---

people self-isolate . . . in order to *slow the spread of COVID-19*") (emphasis added); Ex. 6, Mississippi Executive Order 1466 (implementing additional measures "to further disrupt and *slow the spread of the COVID-19 virus*") (emphasis added); Ex. 7, North Carolina Executive Order No. 121 (implementing measures "to *mitigate community spread of COVID-19*") (emphasis added); Ex. 8, South Carolina Executive Order No. 2020-21 (implementing measures "in light of the *continued spread of COVID-19*") (emphasis added); Ex. 9, Texas Executive Order GA-14 (ordering Texans to minimize social gatherings and in-person contact "to *reduce the spread of COVID-19*") (emphasis added).

[5] At the time of the filing of this Motion, HFIC is aware of at least 80 other rulings by courts that have determined that losses caused by COVID-19 government orders, like the ones alleged by Plaintiff, are barred by virus exclusions similar to the one in Plaintiff's Policy.

held the unambiguous language of the virus exclusion excluded coverage for the plaintiff's losses. *See J&H Lanmark, Inc. v. Twin City Fire Ins. Co.*, Civ. A. No. 5:20-333-DCR, 2021 WL 922057, at *4 (E.D. Ky. Mar. 10, 2021). Courts in the Southern District of Florida, the Northern and Central Districts of California, the Eastern District of Pennsylvania, the Eastern District of Virginia, the Middle District of North Carolina, the Northern District of Alabama, the Eastern District of Missouri, and the District of New Jersey have all reached similar conclusions.[6]

---

[6] *See, e.g., Westside Head & Neck v. Hartford Fin. Servs. Grp., Inc.,* No. 2:20-cv-06132-JFW (JCx), 2021 WL 1060230, at *4-5 & n.2 (C.D. Cal. Mar. 19, 2021) (rejecting argument that the cause of plaintiff's loss was not the virus but the governmental orders aimed at slowing its spread because "[w]ithout the virus, the governmental orders would not exist"); *Robert E. Levy, D.M.D., LLC v. Hartford Fin. Servs. Grp. Inc.*, No. 4:20-cv-00643-SRC, 2021 WL 598818, at *5 (E.D. Mo. Feb. 16, 2021) ("Simply put, Plaintiffs allege their losses were caused by efforts to prevent the spread of COVID-19. The alleged losses fall squarely within the virus exclusion."); *Pure Fitness LLC v. Twin City Fire Ins. Co*., 2:20-CV-775-RDP, 2021 WL 512242, at *4 (N.D. Ala. Feb. 11, 2021) ("COVID-19, which was the root cause of Plaintiff's losses, is a virus. The policy at issue in this case excludes coverage for losses caused, even in part, by a virus."); *Moody v. Hartford Fin. Grp., Inc*., Civ. A. No. 20-2856, 2021 WL 135897, at *9 (E.D. Pa. Jan. 14, 2021) (dismissing plaintiff's claims with prejudice because "its losses stemming from the government orders still do not escape the applicability of the [v]irus [e]xclusion"); *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am*., No. 1:20-CV-437, 2020 WL 7024882, at *2, *4 (M.D.N.C. Nov. 30, 2020) (finding the policies "unambiguously exclude coverage for loss or damage caused directly or indirectly by, or resulting from, any virus" (footnote omitted)); *Nahmad v. Hartford Cas. Ins. Co*., No. 1:20-cv-22833-BLOOM/Louis, 2020 WL 6392841, at *9-10 (S.D. Fla. Nov. 2, 2020) ("[C]oronavirus still remains part of the causal chain leading to Plaintiffs' losses, and the exclusion applies 'regardless of any other cause or event that contributes concurrently or in any sequence to the loss.'"); *Founder Inst. Inc. v. Hartford Fire Ins. Co*., No. 20-cv-04466-VC, 2020 WL 6268539, at *1 (N.D. Cal. Oct. 22, 2020) ("Assuming—for argument's sake only—that the claim for loss of business income due to the shelter-in-place orders would otherwise be covered by Founder's insurance policy, the claim clearly falls within the virus exclusion[.]"); *Wilson v. Hartford Cas. Co.*, Civ. A. No. 20-3384, 2020 WL 5820800, at *9 (E.D. Pa. Sept. 30, 2020) (dismissing all of the plaintiff's COVID-19 claims with prejudice "since the virus exclusion and its exemptions are clear and unambiguous"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020), *dismissed with prejudice*, 2020 WL 7342687 (N.D. Cal. Dec. 14, 2020) (deciding that "the Virus Exclusion applies under its plain and unambiguous language" because the insured's "loss was caused directly or indirectly by the virus"); *Barroso, Inc. v. Twin City Fire Ins. Co*., No. 1:20-cv-632 (LMB/MSN), Tr. of Mtn. Hrg.at 16:12-19 (E.D. Va. Nov. 10, 2020) (Ex. 10) ("I'm more than satisfied that . . . the overwhelming authority supports the defendant's position, that under the specific language of this insurance contract and in particular the very, in my view,

These decisions are consistent with a growing body of law in the Sixth Circuit finding that virus exclusions in property insurance policies, similar to HFIC's Virus Exclusion, bar COVID-19 business income losses akin to those alleged here. *See, e.g.*, *Equity Plan. Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2021 WL 766802, at *18 (N.D. Ohio Feb. 26, 2021) (rejecting argument that the "operative cause of loss … was Ohio's Stay At Home Order, rather than the COVID-19 virus"; virus exclusion excluded coverage); *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-CV-1925, 2021 WL 634982, at *10 (N.D. Ohio Feb. 18, 2021) ("Even if Plaintiff's claimed losses arose from governmental action and not the virus, the virus exclusion applies to loss or damage caused 'directly or indirectly' by a virus.");[7] *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 503 (E.D. Mich. 2020) (virus exclusion barred claim for loss experienced due to the executive order issued to "suppress the spread of COVID-19").

The same outcome is compelled here. Because Plaintiff's alleged losses were caused by the coronavirus, the plain language of the Virus Exclusion bars coverage and the Court should grant judgment on the pleadings for HFIC on Plaintiff's claims.

---

clear exclusion for injuries that are the result, either directly or indirectly, of a virus, means that your client is not covered by this insurance contract."); *see id*., Order (E.D. Va. Nov. 10, 2020) (Ex. 11); *see also Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd*., No. 20-cv-03674-BLF, 2021 WL 428653, at *8 (N.D. Cal. Feb. 8, 2021); *Eye Care Ctr. of N.J., PA v. Twin City Fire Ins. Co*., Civ. No. 20-05743 (KM) (ESK), 2021 WL 457890, at *2 (D.N.J. Feb. 8, 2021); *Colgan v. Sentinel Ins. Co., Ltd*., No. 20-cv-04780-HSG, 2021 WL 472964, at *4-5 (N.D. Cal. Jan. 26, 2021); *BA LAX, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248 (C.D. Cal. Jan. 12, 2021).

[7] *Accord Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, No. 1:20CV1895, 2021 WL 663675, at *9 (N.D. Ohio Feb. 19, 2021) ("the virus prompted the Order and at a minimum, indirectly caused Plaintiffs' claimed loss"); *Santo's Italian Café LLC v. Acuity Ins. Co.*, No. 1:20-cv-01192, 2020 WL 7490095, at *16 (N.D. Ohio Dec. 21, 2020) (same).

## II. Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because There was No Direct Physical Loss or Physical Damage to Its Properties

Even if the Virus Exclusion did not exclude the losses Plaintiff alleges (it does), Plaintiff still would be required to demonstrate that the Policy covers its alleged losses. Plaintiff asks the Court to find that the Policy covers its alleged losses under the Business Income and Extra Expense coverage provision. *See* Doc. 1-1, Compl. ¶¶ 63-67. The Policy requires Plaintiff to demonstrate that its alleged losses were due to an interruption of its operations that was caused by "direct physical loss of or direct physical damage to" its properties to establish coverage under the Business Income and Extra Expense coverage provision. *See id.*, Ex. C at 219.

The Policy does not define "direct physical loss of or physical damage," so the phrase must be given its plain and ordinary meaning. *See Hollis v. Doerflinger*, 137 S.W.3d 625, 629 (Tenn. Ct. App. 2003). Courts applying Tennessee law have determined that the phrase "direct physical of or damage to" the insured property does not include a loss of use of the property absent some physical change to the property itself. *See, e.g.*, *Se. Mental Health Ctr., Inc. v. Pac. Ins. Co., Ltd.*, 439 F. Supp. 2d 831, 837 (W.D. Tenn. 2006) (finding that suspension of the plaintiff's operations due to electrical and telephone outages was not suspension due to "direct physical of or damage to" the insured property because the power and utility lines were not located on the plaintiff's property).[8]

---

[8] The Sixth Circuit also has interpreted "direct physical loss or damage" under Michigan law similarly to the way that courts have interpreted that phrase under Tennessee law. *See Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012). Based on an instructive decision outside of Michigan, the practice of Michigan courts to rely on dictionary definitions for an undefined policy term, and the Couch on Insurance treatise, the Sixth Circuit found that "direct physical loss or damage" to property requires the policyholder to demonstrate that property had suffered "tangible damage." *Id.* at 573. Accordingly, Michigan courts have held "direct physical loss" does not include mere "loss of use" of property as a result of COVID-19-related governmental orders. *See, e.g.*, *Turek Enters.*, 484 F. Supp. 3d at 499-502; *Richard Kirsch, DDS v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *1, *4-6 (E.D. Mich.

Plaintiff does not allege that anything physical happened to its property. Plaintiff, instead, alleges that it had to limit the operations at its facilities due to civil authority orders that were issued to limit the spread of COVID-19. *See, e.g.*, Doc. 1-1, Compl. ¶¶ 2-4 (claiming that Plaintiff suffered losses because it had to limit operations at its facilities due to COVID-19 orders).

This Court already has concluded in *1210 McGavock* that a loss of use of insured property as a result of COVID-19 government closure orders does not constitute "direct physical loss *of* or damage *to*" the covered premises. 2020 WL 7641184, at *8 (original emphasis).[9] This Court's decision in *1210 McGavock* is consistent with an overwhelming majority of decisions from courts across the country that have concluded that an alleged loss of use of insured property is insufficient to demonstrate "direct physical loss of or damage to" that property to trigger coverage under property policies issued by HFIC and its affiliates. *See, e.g.*, *Firenze Ventures LLC v. Twin City Fire Ins. Co.*, No. 20 C 4226, 2021 WL 1208991, at *5 (N.D. Ill. Mar. 31, 2021); *Barbizon Sch. of S.F., Inc. v. Sentinel Ins. Co., Ltd.*, No. 3:20-cv-08578-TSH, 2021 WL 1222161, at *6-8 (N.D. Cal. Mar. 31, 2021); *Westside Head & Neck*, 2021 WL 1060230, at *5-6; *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3418 (JGK), 2021 WL 860345, at *3-4 (S.D.N.Y. Mar. 6, 2021); *Robert E. Levy, D.M.D.,* 2021 WL 598818, at *8; *Protégé*, 2021 WL 428653, at *4; *Karmel Davis & Assocs., Attorneys-At-Law, LLC v. Hartford*

---

Dec. 14, 2020); *St. Julian Wine Co. v. Cincinnati Ins. Co.*, No. 1:20-cv-374, 2021 WL 1049875, at *3-4 (W.D. Mich. Mar. 19, 2021).

[9] That business income coverage extends through a "Period of Restoration," which ends when the property at premises "should be repaired, rebuilt or replaced" (Doc. 1-1, Compl., Ex. C at 220), further confirms coverage is only triggered when insured property has suffered the type of physical damage that would need repairing, rebuilding, or replacing. *See 1210 McGavock*, 2020 WL 7641184, at *8; *Mudpie, Inc. v. Travelers Cas. Ins. Co*., 487 F. Supp. 3d 834, 840 (N.D. Cal. 2020); *Hillcrest Optical, Inc. v. Cont'l Cas. Co*., Civ. A. No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *8 (S.D. Ala. Oct. 21, 2020).

*Fin. Servs. Grp., Inc.*, No. 1:20-cv-02181-WMR, 2021 WL 420372, at *4-5 (N.D. Ga. Jan. 26, 2021); *Colgan*, 2021 WL 472964, at *3; *Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, Civ. A. No. 20-2401, 2021 WL 131556, at *6-7 (E.D. Pa. Jan. 14, 2021).[10]  This Court should find no differently in this case:  Plaintiff's business activities allegedly were interrupted ***because*** of governmental orders issued as a result of COVID-19, not because anything physical occurred to its properties.

The Court similarly should reject Plaintiff's attempt to shoehorn its losses into the scope of coverage by arguing that (1) "direct physical loss of or direct physical damage to" must be read in the disjunctive and direct physical loss encompasses temporary loss of use of the property, (*see* Doc. 1-1, Compl. ¶¶ 48-50, 55), and (2) the governmental orders constitute a "Covered Cause of Loss," (*id.* ¶¶ 37, 61).  Both of these arguments have been routinely rejected, including by this Court.

<u>First</u>, courts specifically have rejected attempts to distinguish between "loss" and "damage" in an effort to trigger coverage.  For example, in *Rose's 1, LLC v. Erie Insurance Exchange*, the court held that even if the term "loss" is treated distinctly from "damage," the adjectives "direct" and "physical" still require "a direct physical intrusion on to the insured

---

[10] *See also Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-04783-SK, 2021 WL 141180, at *3-5 (N.D. Cal. Jan. 13, 2021); *BA LAX*, 2021 WL 144248, at *3-4; *Digital Age Mktg. Grp., Inc. v. Sentinel Ins. Co.*, No. 20-61577-CIV-DIMITROULEAS, 2021 WL 80535, at *5 (S.D. Fla. Jan. 8, 2021); *Roy H. Johnson, DDS v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000-SDG, 2021 WL 37573, at *4-5 (N.D. Ga. Jan. 4, 2021); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 Civ. 4471 (LGS), 2020 WL 7360252, at *2-3 (S.D.N.Y. Dec. 15, 2020); *Geragos & Geragos Engine Co. No. 28, LLC v. Hartford Fire Ins. Co.*, No. CV 20-04647-GW-MAAx, 2020 WL 7350413, at *3-4 (C.D. Cal. Dec. 3, 2020); *Nahmad*, 2020 WL 6392841, at *5-8.  The decisions involving HFIC and its affiliates are part of a growing nationwide consensus that economic losses resulting from COVID-19-related restrictions on commercial activity and social distancing measures are not due to direct physical loss or damage to property under policy language similar to the Policy at issue here.  As of the date of this Motion, HFIC is aware of at least 160 opinions that have reached this conclusion.

13

property." 2020 CA 002424 B, 2020 WL 4589206, at *3 (D.C. Super. Ct. Aug. 6, 2020). Another court explained: "Despite the disjunctive phrasing . . . the phrases are 'direct physical loss of property' or 'damage to property.' Either way, 'property' is involved. The property is either physically lost, *i.e.*, the insured suffers a permanent dispossession of the property, or it is damaged." *Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, Civ. A. No. 2:20-cv-00087-KS-MTP, 2020 WL 6503405, at *5 (S.D. Miss. Nov. 4, 2020); *see also Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 Civ. 4612 (JPC), 2020 WL 7321405, at *6; *Henry's La. Grill, Inc. v. Allied Ins. Co. of Am.*, Civ A. No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020). In the same vein, this Court in *1210 McGavock* declined to find "direct physical loss" is rendered redundant by interpreting the phrase as meaning loss or damage to property that is physical, "affecting the structure of the property," and not meaning intangible economic losses. *See* 2020 WL 7641184, at *8 (citation omitted).[11]

Second, a number of courts have rejected arguments by insureds that governmental orders like those cited by Plaintiff are a Covered Cause of Loss under policies issued by Hartford companies. For instance, the plaintiff in *Franklin EWC* made this argument, and the court called it "Nonsense." 488 F. Supp. 3d at 908 (finding that "the Closure Orders cannot possibly be the same as the Covered Cause of Loss"). Other courts have reached the same conclusion. *See also, e.g.*, *Moody*, 2021 WL 135897, at *6 n.7 ("Said another way, a civil authority order cannot itself be a 'Covered Cause of Loss' that causes loss of or damage to [the insured's] property if the same order is required to be 'the direct result of a Covered Cause of Loss' for purposes of Civil

---

[11] Moreover, Plaintiff's expansive concept of "direct physical loss of or direct physical damage" would result in a "sweeping expansion of insurance coverage," potentially triggering coverage in the case of "any regulation that limits a business's operations." *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F. Supp. 3d 1225, 1231-32 (C.D. Cal. 2020), *dismissed,* 2020 WL 5742713 (C.D. Cal. Sept. 16, 2020); *accord Henry's La. Grill*, 2020 WL 5938755, at *5. The Court should not rewrite the Policy to expand insurance coverage in such a way.

Authority coverage."); *Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Civ. A. Nos. 20-cv-1889 & 20-cv-1869, 2020 WL 7395153, at *6 (E.D. Pa. Dec. 17, 2020) ("[T]he shutdown orders cannot constitute a covered cause of loss under either the civil authority or business income provision."); *Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06-22535-CIV-UNGARO, 2007 WL 9703576, at *1, *4 (S.D. Fla. Oct. 19, 2007) ("The order of civil authority cannot in any reasonable manner be construed as a 'peril,'" where "[p]erils insured against" included "all risk of direct physical loss." (emphasis omitted)).

In short, Plaintiff has not alleged any direct physical loss or damage to insured property. As a result, it is not entitled to Business Income or Extra Expense coverage.

### III. Plaintiff Has Not Alleged That It Is Entitled to Civil Authority or Ingress or Egress Coverage Under the Policy

Plaintiff asks the Court to find that the Policy covers its alleged losses under the Civil Authority and Ingress or Egress coverage provisions. *See* Doc. 1-1, Compl. ¶¶ 68-79. To demonstrate coverage under these provisions, Plaintiff must (1) identify property in the immediate area of or "contiguous" to the insured properties that experienced direct physical loss or damage, (2) establish that access, ingress, or egress to its properties were "specifically prohibited" by the civil authority orders it cites,[12] and demonstrate that the civil authority orders were issued as a result of damage to property in the immediate area of or contiguous to its insured premises. Doc. 1-1, Compl., Ex. C at 205, 208 (Civil Authority and Ingress or Egress coverage provisions). Plaintiff has not met and cannot meet any of these requirements.

First, for the reasons discussed above, Plaintiff has not alleged "direct physical loss or direct physical damage" to any property in the immediate area of or "contiguous" to its facilities and thus cannot state a claim for civil authority coverage. *See, e.g.*, *1210 McGavock*, 2020 WL

---

[12] Plaintiff relies on the civil authority orders that it cites in the Complaint in an attempt to show an entitlement to Ingress or Egress coverage. *See* Doc. 1-1, Compl. ¶ 77.

7641184, at *10 (complaint "does not actually even allege property damage to some neighboring property"); *accord Kirsch*, 2020 WL 7338570, at *7; *Nahmad*, 2020 WL 6392841, at *8.

In fact, the Complaint lacks any specific factual allegations about property in the immediate area or contiguous to the insured properties other than conclusory statements that "numerous establishments within the 'immediate area' of each of Plaintiff's clinics or offices . . . have also suffered direct physical loss of and direct physical damage" and "the Executive Orders require[d] the shutdown of businesses located 'contiguous' to Plaintiff's premises[.]" Doc. 1-1, Compl. ¶¶ 61-62. These types of conclusory allegations are insufficient. *See, e.g.*, *Cetta*, 2020 WL 7321405, at *11 (rejecting vague assertions that closure orders affected businesses besides itself); *accord Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.,* No. 20-cv-03750-WHO, 2020 WL 6562332, at *8 (N.D. Cal. Nov. 9, 2020); *Henry's La. Grill*, 2020 WL 5938755, at *6. Moreover, these allegations conclusively establish that property in the immediate area of or contiguous to Plaintiff's properties did not experience direct physical loss or damage: their operations, like Plaintiff's, were limited due to government orders issued to slow the spread of COVID-19. Plaintiff's failure to make specific allegations about direct physical loss or damage to neighboring property is fatal to any Civil Authority and Ingress or Egress coverage claim.

<u>Second</u>, Plaintiff has failed to allege facts showing that "access" or "ingress or egress" to its facilities was "specifically prohibited." The Complaint does not allege that the orders prohibited Plaintiff from accessing its properties. Nor could it. This is because the orders specifically allowed Plaintiff to continue to provide certain essential services and only recommended that Plaintiff limit non-essential services.[13] Indeed, Plaintiff admits that it was

_____

[13] *See, e.g.*, Doc. 1-1, Compl. ¶¶ 15-24; Ex. 1, Tennessee Executive Order 23 ("all persons in Tennessee are required to stay at home, except for when engaging in Essential Activity or Essential Services"); Ex. 2, Kentucky Executive Order ("all public-facing businesses that

able to "provide limited essential services at some of [its] clinics." Doc. 1-1, Compl. ¶ 26; *see also id.* ¶ 17.

Because Plaintiff could still access its properties, access to its properties was not "specifically prohibited" by the civil authority orders and, thus, coverage does not exist under the Civil Authority or Ingress or Egress coverage provisions. *See, e.g.*, *1210 McGavock*, 2020 WL 7641184, at *10 (concluding that closure orders had not prohibited physical access to plaintiff's property or to the nearby area, nor had plaintiff alleged that it was "ever physically unable to access" its property); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 487 F. Supp. 3d 937, 944-45 (S.D. Cal. 2020) (finding that while the COVID-19 government orders prohibited the operation of plaintiffs' business, they did not prohibit access to their place of business); *Nahmad*, 2020 WL 6392841, at *9 (government orders suspending or reducing plaintiff's practice did not constitute specific prohibition of access); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F.

---

encourage public congregation or, that by the nature of the service of the public, cannot comply with CDC guidelines concerning social distancing, shall cease all in-person operations"); *see also* Doc. 1-1, Compl. ¶ 17, Ex. A (clarifying that "[s]killed rehabilitation professionals . . . shall continue to work in acute care, inpatient rehabilitative settings, and skilled nursing facilities," and "[i]n-home rehabilitative services shall be extremely limited and medically necessary to prevent readmission to an acute care or long-term care setting"); *see id.*, Compl., Ex. B (providing guidance on the "Emergent and Urgent" conditions under which physical therapists could provide services); Ex. 3, Alabama State Health Officer Order (ordering every person to stay at their place of residence "except as necessary to perform any . . . 'essential activit[y]'"); Ex. 4, Georgia Executive Order 04.02.20.01 (requiring all persons to shelter in place unless they are "[c]onducting or participating in Essential Services" or performing a "Minimum Basic Operation[]," among several other exceptions); Ex. 5, Indiana Executive Order 20-08 ("All persons may leave their home or residences only for Essential Activities" (original emphasis)); Ex. 6, Mississippi Executive Order 1466 ("All businesses and non-profit entities … except for Essential Business or Operations . . . shall cease operation and all activities except Minimum Operations," and allowing individuals to leave their residents to perform "Essential Activities"); Ex. 7, North Carolina Executive Order No. 121 ("All persons may leave their homes or place of residence only for Essential Activities…"); Ex. 8, South Carolina Executive Order No. 2020-21 (ordering all persons to limit their movements outside of their residence except "for purposes of engaging in . . . Essential Activities"); Ex. 9, Texas Executive Order GA-14 ("every person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact" with persons not in the same household).

Supp. 3d 690, 694 (N.D. Ill. 2020) ("no order issued in Illinois prohibit[ed] access to plaintiff's premises"); *Henry's La. Grill*, 2020 WL 5938755, at *6 (plaintiffs had "pleaded no facts regarding a civil authority's action that prohibited access to the premises").[14]

    <u>Third</u>, as discussed above, the civil authority orders identified in the Complaint were issued to prevent or limit the *future* spread of the coronavirus, not as a result of existing direct physical loss or direct physical damage to property caused by the virus. *See supra* n.4. Courts have rejected civil authority claims based on COVID-19-related civil authority orders because they were issued to prevent future harm, not because of existing property loss or damage. *See, e.g.*, *Kirsch*, 2020 WL 7338570, at *7 (plaintiff "failed to state a nexus between prior property damage and the [COVID-19] executive order"); *Mudpie*, 487 F. Supp. 3d at 843-44 (COVID-19 governmental closure orders "were preventative" and plaintiff failed to "establish the requisite causal link between prior property damage and the government's closure order").[15]

    Because Plaintiff has not demonstrated and cannot demonstrate (a) access or ingress or egress to its properties was "specifically prohibited," (b) direct physical loss or damage to property in the immediate area of or contiguous to its properties, or (c) the governmental orders

---

[14] These COVID-19 decisions are consistent with long-established precedent on civil authority coverage that government action does not "prohibit" access when it renders a policyholder's premises *less* accessible. *See S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004); *Commstop v. Travelers Indem. Co. of Conn.*, Civ. A. No. 11-1257, 2012 WL 1883461, at *9 (W.D. La. May 17, 2012); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at *4-5 (M.D. Pa. July 6, 2010); *Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*, Civ. A. No. 06-770-C, 2007 WL 2489711, at *3-6 (M.D. La. Aug. 29, 2007); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, Civ. A. No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *5, *7-8 (N.D. Ga. Dec. 15, 2004); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995).

[15] Again, these COVID-19 decisions are in accord with well-established law that rejects civil authority claims where government orders are aimed at fear of future harm, not existing property loss or damage. *See, e.g.*, *United Air Lines v. Ins. Co. of the State of Pa.*, 439 F.3d 128, 134 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 440 F. Supp. 3d 520, 527 (D.S.C. 2020); *Paradies Shops*, 2004 WL 5704715, at *7; *Syufy Enters.*, 1995 WL 129229, at *2.

were issued as a result of that direct physical loss to property near its property, the Court should grant judgment on the pleadings for any claim based on Civil Authority or Ingress or Egress coverage.

## CONCLUSION

For all of the foregoing reasons and others appearing in the record, HFIC respectfully requests that the Court grant it judgment on the pleadings.

**DATED: April 5, 2021.**                          Respectfully submitted,

*/s/ James M. Burd*
James M. Burd
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
3102 West End Avenue, Suite 400
Nashville, TN 37203
Phone: 502-238-8500
Email: james.burd@wilsonelser.com

Sarah D. Gordon
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Phone: 202-429-8005
Email: sgordon@steptoe.com
*Pro Hac Vice*

*Attorneys for Defendant Hartford Fire
Insurance Company*

19

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.01, it is hereby certified that service of a true and correct copy of the foregoing has been made upon the following by e-mail and via the Court's CM/ECF system on this 5th day of April 2021:

Heather Howell Wright
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203
Phone:  615-252-2342
Email:  hwright@bradley.com

Daniel I. Schlessinger
Tamra J. Miller
Jaszczuk P.C.
30 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
Phone:  312-442-0509
Email:  dschlessinger@jaszczuk.com
Email:  tmiller@jaszczuk.com
*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff Agilitas USA, Inc.*

/s/ James M. Burd
Counsel for Defendant
