IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AGILITAS USA INC. d/b/a RESULTS PHYSIOTHERAPY,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>HARTFORD FIRE INSURANCE COMPANY,  )<br>  )<br>  Defendant.  ) | Case No. 3:21-cv-00094<br>Judge Aleta A. Trauger |

## MEMORANDUM

This case is one of many nationwide—and several arising within this district—challenging the denial of insurance coverage for business losses incurred as a result of governmental orders closing or limiting the operation of "non-essential businesses" (Doc. No. 1-1, Compl. ¶ 14[1]), including physiotherapy facilities such as those operated by the plaintiff here, in efforts to stem the spread of the 2019 novel coronavirus ("COVID," "COVID-19," or "coronavirus") after it was first recognized as a pandemic by the World Health Organization in March 2020. Now before the court is the Motion for Judgment on the Pleadings (Doc. No. 13) filed by defendant Hartford Fire Insurance Company ("Hartford"), seeking judgment in its favor on the plaintiff's claims for a declaratory judgment and damages arising from the defendant's alleged breach of a commercial insurance policy when it denied the plaintiff's claim for coverage of such business losses. For the reasons set forth herein, the motion will be granted, and this case will be dismissed.

---

[1] Exhibit 1 to the defendant's Notice of Removal includes all of the state court pleadings, not just the Complaint. The Complaint occupies pages 4–18 of Exhibit 1.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Agilitas USA Inc d/b/a Results Physiotherapy ("Results" or "plaintiff") filed suit in the Chancery Court for Davidson County, Tennessee on November 18, 2020. Hartford removed the case to this court on the grounds of diversity jurisdiction. (Doc. No. 1.)

The plaintiff owns and operates physiotherapy centers in Southern Indiana, Tennessee, Alabama, Georgia, Kentucky, Mississippi, North Carolina, South Carolina, and Texas. (Compl. ¶ 1.) It purchased from Hartford a commercial property insurance policy ("Policy"), No. 08 UUN AY9439, in effect from May 31, 2019 through May 31, 2020. (*Id.* ¶ 28; Policy, Doc. No. 1-1, at 25–469.[2]) Results states that it purchased the Policy "to protect, among other things, lost income in the event that its business operations were interrupted" and that it "faithfully paid premiums to Defendant for the Policy." (Compl. ¶¶ 29–30.) Under the Policy, the defendant agreed to pay for "direct physical loss of or direct physical damage to . . . Covered Property caused by or resulting from a Covered Cause of Loss." (*Id.* ¶ 31; Policy, Doc. No. 1-1, at 213.)

Beginning in March 2020, state officials in each of the states in which Results operates facilities began issuing orders ("Executive Orders") closing businesses that did not offer "essential services," including "many of Plaintiff's facilities," and "directing citizens to stay home." (Compl. ¶ 2; *see also id.* ¶¶ 14–24.) Under these Executive Orders, Results "was required to close its physiotherapy centers or severely limit business at those centers for a period of several weeks." (*Id.* ¶ 25.) The Executive Orders thus prevented Results' employees and patients from physically occupying its facilities and prevented the plaintiff from operating its businesses. (*Id.* ¶ 3.) Results suffered a "staggering loss of business income" as a result of the "government-mandated shutdowns" effected by the Executive Orders. (*Id.* ¶¶ 4, 7.)

---

[2] The court uses the CM/ECF pagination when citing to the Policy.

Believing that the Policy covered it for losses attributable to business interruption, Results submitted a claim to Hartford on July 22, 2020 for the losses suffered as a result of the Executive Orders. (*Id.* ¶ 43.) On August 4, 2020, Hartford initially responded with a "reservation of rights" and requested additional information, but, after the plaintiff supplied additional information, Hartford denied the claim on September 18, 2020. (*Id.* ¶¶ 44–46.)[3] In its denial letter, Hartford stated that "there has been no physical loss or damage caused by or resulting from a Covered Cause of Loss." (*Id.* ¶ 46.) The plaintiff alleges that Hartford's denial of its claim misconstrued both the "terms of the Policy and the cause of Plaintiff's losses" and asserts that the clear terms of the Policy required Hartford to cover its claim. (*Id.* ¶¶ 47, 58–62.)

The Complaint shows that the plaintiff contests the denial of coverage, but as a matter of contract interpretation, rather than as a matter of disputed facts. The plaintiff asserts that "[t]he Policy requires either 'direct physical loss of' Plaintiff's property or 'direct physical damage to' Plaintiff's property" and that these two phrases are distinct from each other and have different meanings. (*Id.* ¶ 48 (quoting Policy, Doc. No. 1-1, at 213).) The plaintiff asserts that it suffered such "'direct physical loss of or direct physical damage to' its property as a result of the Executive Orders," insofar as the Executive Orders "deprived Plaintiff of access to its properties, prevented patients from physically occupying Plaintiff's facilities and prohibited Plaintiff from operating its businesses, thereby impairing, and in fact nearly eliminating entirely, the normal function and value of Plaintiff's business property." (*Id.* ¶¶ 48, 58.) Results also asserts that Hartford is obligated to provide coverage of its business losses under the "Civil Authority" and "Ingress/Egress" provisions of the Policy. (*Id.* ¶¶ 60–62.)

---

[3] The Complaint states that the communications between the plaintiff and the defendant are attached to the pleading as Exhibits D–G. These particular exhibits, however, were not included with the state court documents attached to the defendant's Notice of Removal.

Based on these assertions, the Complaint sets forth three breach of contract claims under Tennessee common law, for breach of the Policy provisions covering "property loss and damage" claims ("Count One"), "civil authority claims" ("Count Two"), and "ingress/egress claims" ("Count Three"), as well as a declaratory judgment claim, seeking a judicial declaration that the Policy's coverage was triggered by the "direct physical loss of and/or damage to Plaintiff's property" and that the Policy's exclusions do not apply ("Count Four").

Following removal of the case to this court, Hartford filed an Answer denying liability and asserting affirmative defenses. (Doc. No. 3.) It then filed its Motion for Judgment on the Pleadings and supporting Memorandum of Law. (Doc. Nos. 13, 13-1.) The plaintiff has filed a Response (Doc. No. 16), basically reiterating the arguments made in the Complaint, and the defendant has filed a Reply (Doc. No. 19), as well as several Notices of Supplemental Authority (Doc. Nos. 20, 21), bringing to the court's attention additional court opinions from a variety of jurisdictions rejecting claims brought by similarly situated plaintiffs based on similarly worded commercial insurance policies.

## II.     STANDARD OF REVIEW

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). Thus, "[f]or purposes of a motion for judgment on the pleadings, all well pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).

"The proper interpretation of a contract is a question of law." *JPMorgan Chase Bank*, 510 F.3d at 582. Legal questions regarding interpretation of a contract may, therefore, properly be

decided on a motion for judgment on the pleadings. *Id.*

### III. DISCUSSION

In this diversity case, the court applies substantive state law to questions involving contract interpretation. *See Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). There is no dispute in this case that Tennessee law applies, and, under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012). When the language of an insurance policy is clear and unambiguous, the court is bound to give effect to that language. *Id.* at 441. Under Tennessee law, the court should read an insurance contract as a layperson would read it. *Paul v. Ins. Co. of N. Am.*, 675 S.W.2d 481, 484 (Tenn. Ct. App. 1984). "Where an all-risk insurance policy is involved, the insurer must show that an exclusion applies in order to avoid liability, and exclusionary clauses are to be strictly construed against the insurer." *Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 136 F. Supp. 2d 901, 905 (W.D. Tenn. 2001) (citations omitted).

The defendant basically makes three arguments in support of its Motion to Dismiss: (1) that a Policy exclusion of coverage for loss caused by a virus (the "Virus Exclusion Clause") precludes recovery under the Policy altogether, even if the plaintiff's claims otherwise fell within the scope of covered claims; (2) even if the Virus Exclusion Clause did not apply, the plaintiff does not plausibly allege that it suffered "direct physical loss of or direct physical damage to" its properties, as required to establish coverage under the Business Income and Extra Expense Coverage Form ("Business Income Clause") of the Policy (Doc. No. 13-1, at 18 (quoting Policy, Doc. No. 1-1, at 219); and (3) the plaintiff fails to allege that the Policy covers its alleged losses under the Civil Authority or Ingress and Egress coverage provisions, because it has not alleged facts showing that "property in the immediate area of or 'contiguous' to the insured properties . . .

experienced direct physical loss or damage" or that "access, ingress, or egress to its properties" was "specifically prohibited" by the Executive Orders (*id.* at 22 (quoting Policy, Doc. No. 1-1, at 205, 208)).

All of the defendant's arguments have merit.

### A. The Virus Exclusion Clause

The Policy expressly excludes coverage for "loss or damage caused directly or indirectly" by the "[p]resence, growth, proliferation, spread or any activity of . . . virus." (Doc. No. 1-1, at 226, 227.) The defendant argues that, even if the plaintiff could show that it suffered covered losses under an express coverage provision, the Virus Exclusion Clause precludes coverage. This exclusion applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (*Id.* at 226.)[4]

Results insists that the Virus Exclusion Clause has no application here, because the Complaint does not allege that the virus was "present" on the plaintiff's properties or that its losses are due to the virus. (Doc. No. 16, at 16.) Rather, Results' losses were caused by the Executive Orders. (*See id.* at 17 "It was those Orders—and not the virus—that resulted in Results' closures and losses.") The defendant argues that "[t]he orders that Plaintiff cites as the cause of its losses demonstrate that they were issued to limit the spread of COVID-19, the disease caused by SARS-CoV-2, which undisputedly is a virus" and that, consequently, "it is clear that Plaintiff's losses were caused 'directly or indirectly' by the spread of a virus." (Doc. No. 13-1, at 14 (citing Compl. ¶¶ 14–24).)

---

[4] The Policy expressly provides for "Limited Coverage" of damage caused by "'fungus,' wet rot, dry rot, bacteria or virus," but only when some other physical loss or damage to the property results in "'fungus,' wet rot, dry rot, bacteria or virus." (Policy, Doc. No. 1-1, at 208.) The plaintiff does not contend that this provision applies to its losses.

Numerous courts presented with the question have held that similar exclusions bar coverage for business losses stemming from closures implemented for the purpose of attempting to mitigate the spread of the coronavirus. For instance, the Eastern District of Michigan addressed a policy exclusion barring coverage for loss that would not have occurred but for some "[v]irus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness, or disease." *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 20-11655, 2020 WL 5258484, at *8 (E.D. Mich. Sept. 3, 2020). The plaintiff there, like the plaintiff here, argued that the virus exclusion did not apply, because its business loss was due, not to COVID-19, but to a closure order. The court was not persuaded:

> Plaintiff's contention that the Order was the "sole, direct, and only proximate cause" of Plaintiff's losses is refuted by the Order itself. The Order expressly states that it was issued to "suppress the spread of COVID-19" and accompanying public health risks. The only reasonable conclusion is that the Order—and, by extension, Plaintiff's business interruption losses—would not have occurred but for COVID-19. Plaintiff is therefore wrong to suggest that "whether the reason for the [Order] was preventing the spread of a virus or an asteroid spreading magic dust is irrelevant." If it were the latter, the Virus Exclusion would not apply.

*Id.* (internal record citations omitted); *accord Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, Nos. 20-1869, 20-1869, 2020 WL 7395153, at *8 (E.D. Pa. Dec. 17, 2020) ("In an attempt to circumvent this exclusion, the insureds argue that the cause of their losses and damages is the shutdown orders, not the COVID-19 virus. This effort fails."); *Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am.*, No. 2:20-cv-00401-FtM-66NPM, 2020 WL 5240218, at *2 (M.D. Fla. Sept. 2, 2020) (where the policy at issue contained an exclusion for loss or damage caused "directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease," holding that, because the plaintiff dental practice's damages "resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental

office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion"); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-CV-04434 JSC, 2020 WL 5642483, at *2 (N.D. Cal. Sept. 22, 2020) ("Thus, as the loss was caused directly or indirectly by the virus, the Virus Exclusion applies under its plain and unambiguous language. . . . [U]nder Plaintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply. Nonsense.").

The plaintiff seeks to distinguish this case on the facts from such prior decisions and from this court's decision in *1210 McGavock Street Hospitality, LLC v. Admiral Indemnity Co.*, 509 F. Supp. 3d 1032 (M.D. Tenn. 2020), in which the court dismissed nearly identical contractual claims. The plaintiff claims that the Policy exclusion for virus in this case is narrower than that at issue in *1210 McGavock Street*, because the language in Results' Policy "specifically requires that virus be present and/or spreading on the premises," but the policy in *1210 McGavock Street* did not. (Doc. No. 16, at 17.)

The plaintiff is mistaken. The clear and unambiguous language of the Virus Exclusion Clause in its Policy excludes coverage for any "loss or damage" caused "directly or indirectly" by the "presence, growth, proliferation, spread or any activity" of a virus, "regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage." (Doc. No. 1-1, at 226, 227.) This language requires the presence *or* spread *or* any other activity of the virus. It does not require that the virus be present or spreading on the plaintiff's business premises. The language of the Executive Orders, as alleged in the Complaint, establishes that the Executive Orders would not have been issued were it not for the threat of the spread of the coronavirus, which is indisputably a virus. The plaintiff's loss or damage was inescapably "caused directly or indirectly" by the coronavirus, and the Virus Exclusion Clause applies.

Because the Virus Exclusion Clause clearly precludes coverage for the business losses incurred by Results, the defendant is entitled to judgment in its favor as a matter of law on both the breach of contract claims and the claim for declaratory relief, which itself would require a finding that the defendant breached the Policy by denying relief.

B. The Business Income Clause

Even if the Virus Exclusion Clause did not apply, the plaintiff's claim falls outside the terms of the Business Income Clause of the Policy, which expressly provides coverage only for "direct physical loss of or direct physical damage to" the plaintiff's properties "caused by or resulting from a Covered Cause of Loss." (Doc. No. 1-1, at 219.) More specifically, the defendant agreed to pay

> for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business during the Period of Restoration due to *direct physical loss of or direct physical damage to property* [covered by the Policy] caused by or resulting from a Covered Cause of Loss . . . .

(*Id.* (emphasis added).) The plaintiff cannot show that the Executive Orders—or the coronavirus itself—caused "direct physical loss of or direct physical damage to" the plaintiff's property, and its arguments to the contrary are meritless.

The plaintiff devotes a substantial quantity of ink to its argument that the Policy does not define the terms "damage" or "loss" and that, under Tennessee law, the court must interpret these terms in the disjunctive, as distinct from each other, and that the term "loss" should be construed to encompass its loss of access to the covered premises. (Doc. No. 16, at 8.) It cites to several cases finding in favor of an insured based on similar contract language, including *Henderson Road Restaurant Systems, Inc. Inc. v. Zurich American Insurance Co.*, 513 F. Supp. 3d 808 (N.D. Ohio 2021), which granted summary judgment for the plaintiffs, holding, under Ohio law, that the policy provision requiring the insurer to pay for "direct physical loss of or damage to 'real property'" was

ambiguous, *id.* at 820; that the provision, construed in favor of the insured, required the insurance company to cover the plaintiffs' lost business income arising from COVID-related closures, *id.* at 824; that the "microorganism" exclusion provision did not apply, *id.* at 826; and that the "Loss of Market or Delay" exclusion did not exclude coverage, *id.* at 827. On appeal of that decision, however, the Sixth Circuit recently vacated the district court's ruling on the insurance coverage issues, holding that the policy's coverage for "direct physical loss of or damage to property" did not apply to the plaintiffs' loss of business income due to COVID-19-related government shutdown orders that halted their dine-in operations. *In re Zurich Am. Ins. Co.*, No. 21-0302, 2021 WL 4473398, at *1 (6th Cir. Sept. 29, 2021) (citing *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398 (6th Cir. Sept. 22, 2021).

In *Santo's Italian Café*, the Sixth Circuit specifically considered whether "a pandemic-triggered government order, barring in-person dining at a restaurant, counts as 'direct physical loss of or damage to' the property" and found that the policy at issue did not cover the loss caused by the COVID-19 virus and government shut-down orders. *Santo's Italian Café*, 15 F.4th at 401. Specifically, the court found the insurance policy's terms, which required "direct physical loss of or damage to Covered Property," were not ambiguous, explaining:

> Nothing unexpected arises from consulting dictionary definitions of the key disputed terms of this clause: "direct physical loss of" property. "Direct" means "[e]ffected or existing without intermediation or intervening agency; immediate." Oxford English Dictionary Online (3d ed. 2021). "Physical" means "natural; tangible, concrete." *Id.* "Loss" means "[p]erdition, ruin, destruction; the condition or fact of being 'lost,' destroyed, or ruined," or "being deprived of." *Id.* And "property" means "any residential or other building (with or without associated land) or separately owned part of such building (as an apartment, etc.)," as well as "[s]omething belonging to a thing; an appurtenance; an adjunct." *Id.*

*Id.* The court continued:

> Whether one sticks with the terms themselves (a "direct physical loss of" property) or a thesaurus-rich paraphrase of them (an "immediate" "tangible" "deprivation" of property), the conclusion is the same. The policy does not cover this loss. The

> restaurant has not been tangibly destroyed, whether in part or in full. And the owner has not been tangibly or concretely deprived of any of it. It still owns the restaurant and everything inside the space. And it can still put every square foot of the premises to use, even if not for in-person dining use.

*Id.* The Sixth Circuit found that neither the coronavirus nor the government shutdown orders created a direct physical loss of property or direct physical damage to it, explaining that "[a] loss of use simply is not the same as a physical loss." *Id.* at 402 (citing with approval *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1143-44 (8th Cir. 2021) (rejecting oral surgeon's claim that Iowa's gubernatorial order prohibiting non-emergency dental procedures was a "direct 'loss' to property"); *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *1 (11th Cir. Aug. 31, 2021) (per curiam) (rejecting dentistry practice's claim that Georgia's shelter-in-place order caused "'direct physical loss or damage' to property")).

While this case involves Tennessee law rather than Ohio law and physiotherapy centers rather than restaurants, the same analysis applies. It is clear in this case, too, that the plaintiff did not experience "direct physical loss of or direct physical damage to" its properties and that the Business Income Clause of the Policy does not provide coverage for the business losses caused by the Executive Orders.

### C. Civil Authority and Ingress/Egress Clauses

The Complaint also asserts that the Civil Authority and Ingress or Egress coverage provisions of the Policy cover the plaintiff's losses. (Compl. ¶¶ 68–79.) The plaintiff has not actually responded to the defendant's argument in its Motion for Summary Judgment that its alleged losses under these provisions are not covered. Regardless, it is clear as a matter of law that these provisions do not provide the protection the plaintiff expected.

The Civil Authority Clause provides coverage for loss of Business Income incurred at the plaintiff's properties when access to those properties is "prohibited by order of a civil authority as

the direct result of a Covered Cause of Loss to property *in the immediate area*" of the plaintiff's properties. (Policy, Doc. No. 1-1, at 205 (emphasis added).) However, the plaintiff has not alleged that the Executive Orders were issued as the result of a covered loss— "direct physical loss or direct physical damage"—to any property in the "immediate area" of the plaintiff's premises and therefore has not stated a claim for Civil Authority coverage. As set forth above, loss caused by a virus is not a "Covered Cause of Loss." Consequently, the Civil Authority Clause does not provide coverage.

> Likewise, the Ingress or Egress Clause states that coverage will be provided for
>
> actual loss of Business Income [the insured] sustain[s] when ingress or egress to [its] "Scheduled Premises" is specifically prohibited as the direct result of a Covered Cause of Loss to property at premises that is [sic] contiguous to your "Scheduled Premises."

(*Id.* at 208.) The plaintiff has not alleged that access to its properties was "specifically prohibited." As the defendant points out, the Executive Orders did not prevent the plaintiff from continuing to provide certain essential services. Even if the Executive Orders had specifically prohibited access to the plaintiff's premises, the lack of access was not as the result of a "Covered Cause of Loss" to property contiguous to the plaintiff's premises. Again, even assuming neighboring businesses were closed as well, the spread of COVID-19, a virus, is not a covered cause of loss.

Thus, the plaintiff's losses are not covered by these provisions either.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant the Motion to Dismiss. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge